UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH WHITE,<br><br>         Plaintiff,<br><br>  v.<br><br>ADP, INC.,<br><br>         Defendant. | 22 Civ. 4800 (DEH)<br><br>**<u>OPINION<br>AND ORDER</u>** |

DALE E. HO, United States District Judge:

  Keith White ("White" or "Plaintiff") brings this action against his former employer, ADP, Inc. ("ADP" or "Defendant"), alleging age and race discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). White seeks compensatory and punitive damages, and attorneys' fees and costs. ADP now moves for summary judgment. For the reasons that follow, Defendants' motion for summary judgment is **GRANTED** as to the Section 1981 claim; and the Court declines to exercise supplemental jurisdiction over Plaintiff's New York State and City claims, which are **DISMISSED** without prejudice to refiling in state court.

BACKGROUND[1]

  The following facts are taken from the Amended Complaint, the Rule 56.1 Statement and Counterstatement, and evidentiary submissions in connection with this motion. As described in

---

[1] For purposes of this motion, the Court assumes the truth of the factual allegations in Plaintiff's First Amended Complaint, ECF No. 20 ("Amended Complaint" or "AC"). Relevant filings include Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, ECF No. 71 ("Def.'s Br."); Plaintiff's Memorandum of Law in Opposition, ECF No. 73 ("Pl.'s Opp'n"); Defendant's Reply, ECF No. 79 ("Def.'s Reply"); the parties' declarations containing exhibits in

the Discussion section, *infra*, the facts are either undisputed or, if disputed, resolved in the light most favorable to Plaintiff as the non-moving party, with all reasonable inferences drawn in his favor. *See Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 135 (2d Cir. 2023).

I.  **Facts**

White was employed as an Operational Risk Program Manager in ADP's Risk and Controls Group ("Group"), which was part of ADP's larger Global Security Organization, from April 2015 through May 2019. AC ¶¶ 13, 16, 23; Def.'s Br. 2, 4. At the time his employment was terminated, Plaintiff was the only Black employee and the oldest employee in the Group. AC ¶¶ 23–25. ADP is a provider of payroll services. *Id*. ¶ 15.

Plaintiff's pleadings allege the following factual allegations, which are described herein (but are not necessarily assumed to be true, as this is a motion for summary judgment rather than a motion to dismiss). From the start of his employment until approximately 2018, White received the highest performance ratings of any employee in the Group. AC ¶ 22. In June 2018, ADP elevated Trina Ford ("Ford") to Vice President of Global Integrated Risk Operations. *Id*. ¶¶ 1, 31. In October 2018, ADP passed over White for a management position and instead hired a younger, non-Black employee with no formal training in the Group. *Id*. ¶¶ 1, 28. In December 2018, Ford interfered with White's plans to spend the holidays with his family. *Id*. ¶ 30. In January 2019, ADP reassigned White's substantive work to younger and non-Black associates. *Id*. ¶ 31. In April 2019, Ford altered White's work arrangement by requiring him to commute to Roseland, New Jersey three times per week, while younger and non-Black associates who lived in New Jersey were not required to do so. *Id*. ¶¶ 32, 33.[2] ADP terminated White's employment on May 7, 2019.

---

support of their positions, ECF Nos. 62, 74; and the parties' Rule 56.1 statements, ECF Nos. 70, 72, 80.

[2] The Amended Complaint alleges that Ford altered White's work arrangement in "April 2018," but the chronological presentation of alleged facts in the Amended Complaint suggests that date

*Id.* ¶ 23. ADP confiscated a personal phone and notebook from White at the time of his termination and did not provide White any severance benefits. *Id.* ¶ 34. Upon information and belief, ADP subsequently terminated Ford's employment due, in part, to her conduct with respect to White. *Id.* ¶ 35.

## LEGAL STANDARDS

**I.   Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (internal quotation marks omitted). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing particular materials in the record. *See* Fed. R. Civ. P. 56(c)(1)(A). Where, as here, the plaintiff is the party opposing summary judgment, the Court is "required to accept all sworn statements by [the plaintiff] as to matters on which []he [is] competent to testify, including what

---

contains a typo and should be April *2019*. AC ¶ 32. Regardless, whether the date is 2018 or 2019 does not impact the Court's resolution of this motion.

[]he did, what []he observed, and what []he was told by company managers." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019).

Courts must take an extra measure of caution in evaluating employment discrimination claims because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). However, even in this context, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), and must offer some "hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). "'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient' to defeat a summary judgment motion." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)). A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge of discrimination, is also insufficient to defeat a motion for summary judgment. *See Fincher v. Depository Tr. & Clearing Corp.*, No. 06 Civ. 9959, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008), *aff'd*, 604 F.3d 712 (2d Cir. 2010).

## II.  Section 1981[3]

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). Discrimination claims under Section 1981 are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411

---

[3] Courts apply the same standards in Title VII cases as in cases brought under 42 U.S.C. § 1981. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000). Accordingly, the Court cites both Title VII and Section 1981 caselaw throughout its analysis of White's Section 1981 claim.

U.S. 792 (1973). *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (stating that claims for race discrimination under Section 1981 are analyzed under the *McDonnell Douglas* burden-shifting framework). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. That means that a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [the] inference of discrimination." *Ruiz*, 609 F.3d at 491–92. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse action. *Ruiz*, 609 F.3d. at 492. If the defendant comes forward with evidence of that, the burden shifts back to plaintiff to show that the asserted legitimate reason is not the true reason and is in fact pretext for intentional discrimination. *Id.*

When this motion was filed, courts in this Circuit held that to allege the third element required to make a prima facie case—adverse employment action—a plaintiff was required to have endured some "*materially significant disadvantage* with respect to the terms of the plaintiff's employment." *Littlejohn v. City of New York*, 795 F.3d 297, 312 n.10 (2d Cir. 2015). But the landscape has changed since the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). In *Muldrow*, the Supreme Court resolved a Circuit split and rejected decisions of various Courts of Appeals—including the Second Circuit's—that required plaintiffs to allege "materially significant" employment actions. *See Muldrow*, 601 U.S. at 353, 353 n.1. Instead, plaintiffs need only allege "some harm respecting an identifiable term or condition of employment," but that harm need not be "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at

5

355; *see also Moy v. Napoli Shkolnik, PLLC*, No. 23 Civ. 3788, 2024 WL 3498131, at *7–8 (S.D.N.Y. July 22, 2024) (applying *Muldrow* to a Section 1981 claim).

As for the fourth element required to present a prima facie case, a minimal inference of discriminatory intent can arise from a variety of circumstances, including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312.

## DISCUSSION

White alleges that ADP discriminated against him because he is an older Black man. He alleges that this discrimination took multiple forms, including that ADP denied him a promotion; forced him to commute into the office; and ultimately terminated him.[4] ADP argues that White was not denied any promotions because he did not apply for any; that White was not a "home-shored" employee and the decision whether he worked from home or in the office was fully within Ford's discretion; and that White was ultimately terminated because Ford experienced "threatening behavior" from White during a meeting. White's race discrimination claim under Section 1981 is dismissed because there is no genuinely disputed fact the resolution of which would entitle him to relief with respect to this claim.

---

[4] The parties also address a separate incident that occurred in 2016 or 2017 between another ADP employee, Marta Palanques, and Plaintiff. *See* Def.'s Br. 13; Pl.'s Opp'n 13. In denying Plaintiff's request to amend his complaint a second time to add this incident, the Court thoroughly explained why it may not consider alleged conduct that did not relate back to the initial complaint. *See generally* Opinion & Order, ECF No. 43. Accordingly, the Court does not comment on or consider that separate incident in this decision.

I.      Section 1981 Racial Discrimination Claim

1.      Plaintiff's Prima Facie Case

It is undisputed that White is a member of a protected class and that he was qualified for his position. Pl.'s Opp'n 11; *see Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (describing termination as an example of an adverse employment action). But the parties do dispute the third and fourth elements of a prima facie case with respect to at least some of his claims—i.e., whether, apart from termination (which is indisputably an adverse employment action), Plaintiff suffered an adverse action when he was not selected for a promotion and when he was required to work in-person;[5] and whether there is "at least minimal support for the proposition that [ADP was] motivated by discriminatory intent" taking the alleged adverse employment actions against him. *Littlejohn*, 795 F.3d at 311.

White does not allege direct evidence of discrimination. He seeks instead to establish circumstantial evidence of discriminatory intent. An inference of discrimination can arise from circumstances including, but not limited to, "more favorable treatment of employees not in the protected group," "the sequence of events leading to the plaintiff's discharge," or "when an

---

[5] The parties dispute Plaintiff's allegation that he was passed over for a promotion. Def.'s Br. 15–16; Pl.'s Opp'n 14–15. It is unclear whether Plaintiff actually applied for a promotion, which a plaintiff alleging discrimination based on the failure to promote must generally (although need not always) establish. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004). White also argues that not receiving a promotion was, in effect, a "demotion," but ADP disputes that, because White's work assignments, and team arrangement in relation to the rest of the Group, remained consistent. Def.'s Br. 15; *see Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (demotion shown by "a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (citation omitted). The parties also dispute whether Ford requiring White to commute into the office was an adverse employment action cognizable under the law. Def.'s Br. 16–17; Pl.'s Opp'n 14. Simply for the purposes of this decision, the Court assumes *arguendo* that these actions (the failure to promote and requirement to work in-person) constitute adverse employment actions.

employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn*, 795 F.3d at 312–13 (citations omitted).

For purposes of this motion, the Court assumes that Plaintiff has satisfied the third and fourth elements of a prima facie claim with respect to each of the employment actions underlying his claims (the failure to promote, the in-person work requirement, and termination). His claims nevertheless fail, because, as explained below, there is no dispute that Defendants have set forth legitimate, non-discriminatory reasons for these actions, and Plaintiff has not established a genuine dispute as to whether these proffered reasons were pretextual.

### 2. Defendant's Legitimate, Non-Discriminatory Reasons

The Court concludes that ADP has discharged its burden to articulate legitimate, non-discriminatory reasons for not promoting White, requiring him to commute into the office, and ultimately terminating him. To satisfy its burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255. ADP is not required to persuade the Court that it was actually motivated by the proffered reasons. *Id.* All that is required at this stage is that ADP "introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). ADP has presented evidence to satisfy its burden.[6] The Court discusses each of the employment actions underlying Plaintiff's claims in turn.

---

[6] While the Court does not rely on these facts in reaching its decision, it notes that ADP also argues that a few facts globally undercut White's allegations of racism. First, Ford—who made the various employment decisions giving rise to Plaintiff's claims—is herself Black. Def.'s Br. 11. Second, ADP notes that White was not the only Black associate in the Global Security Organization—he was just the only Black associate within his particular Group of three. *Id.* at 2. Third, ADP contends that White has not alleged or presented any evidence that ADP employees made degrading comments about his race or age, or made invidious comments about Black or older employees. *Id.* at 12.

8

(a) *Failure to Promote*.  ADP offers two legitimate, non-discriminatory reasons for not promoting White.  First, ADP explains that Ford hired Shah to the role of Senior Director, in part, because Ford had worked with Shah in her previous role at ADP and transitioned him to her new team after her promotion; and further, that Ford was already having difficulties with White.  *Id.* at 3.  Second, Ford also explained that, because White was a program manager, he would not qualify for a senior director-level role.  Def.'s 56.1 Statement ¶ 34 ("The normal progression at ADP was 'program manager, manager, senior manager if we had one, director, senior director. [. . .]  He was a program manager.  I had directors so I'm not sure what team he could take over at that level.'").  In fact, promoting White to the Senior Director roles would have required elevating him over other members of his team, including Reznik—who was already a level above White.  Def.'s Br. 15; Def.'s Reply 6–7.  Meanwhile, Shah was already a Senior Director on another team, two levels above the program manager level—which sufficiently rebuts White's assertion that Shah was less qualified for the job than White.  Def.'s Reply 6–7; *cf. Holt v. KMI–Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (mere assertion of personal belief that plaintiff was most qualified person for positions is insufficient).  These facts satisfy ADP's burden to show a legitimate, non-discriminatory reason for not promoting White.

(b) *In-Person Work Requirement*.  ADP satisfies its burden to show a legitimate, non-discriminatory reason for requiring White to work in-person.  ADP explains that pursuant to its "Work from Home Policy," regularly working from home was "not an associate entitlement" and it "may be terminated by ADP at any time and for any reason."  Def.'s Br. 3.  ADP explains that Ford required White to work from the ADP office in New Jersey regularly in 2018 because she believed face time in the office would help White meet his deliverable goals.  *Id.* at 16.  That is a legitimate non-discriminatory reason for requiring work in-person for several days a week.  ADP also notes that another member of White's team—Reznik, and his new supervisor—Shah, also

9

worked from ADP's New Jersey office, and cites deposition and declaration testimony to that effect; and while White purports to dispute this statement, he does not offer any record evidence to contradict it. *See* Def.'s 56.1 Statement ¶ 8; Def.'s Reply 6. That undermines any inference of discrimination. *Id.*; *see, e.g., Xiang v. Eagle Enterprises, LLC*, No. 19 Civ. 1752, 2022 WL 785055, at *18 (S.D.N.Y. Mar. 15, 2022) (dismissing plaintiff's discrimination claims under NYCHRL when she provided no evidence she was treated differently from similarly-situated person regarding request to work from home).

(c) *Termination*. Last, ADP explains that Ford made the decision to terminate White after a May 7, 2019 meeting they had to discuss White's transition to Ngozi Eze's team. Def.'s Br. 3–4. Ford represented that, in this meeting, White was "disrespectful, and defensive" and was "raising his voice," such that Ford "fe[lt] threatened, fearful, and concerned for her physical safety," as she "was unsure of Plaintiff's next move." *Id.* at 4, 17–18. ADP lays out Ford's representations of that meeting in its motion briefing, and supports its position through contemporaneous exhibits, including an email from Ford to HR immediately after the meeting capturing her perception of the meeting. *Id.* at 4–5; Saloman Decl. Ex. 12, ECF No. 62. ADP also submits older work-related correspondence demonstrating that discussions about White's possible transition to Eze's team strained relations between Ford and White, and Shah and White. Saloman Decl. Exs. 12, 14, 15. All of this is sufficient to satisfy ADP's burden to show legitimate, non-discriminatory reasons for the alleged adverse employment action taken against White.

### 3. Pretext

Having determined that ADP satisfied its burden of establishing legitimate, nondiscriminatory reasons for the employment actions at issue, the Court now turns to whether a reasonable jury could find that ADP's stated reasons were pretext for a racially discriminatory decision. At this stage of the burden-shifting framework, the burden shifts back to the plaintiff to

10

establish that the real reason for the adverse employment decisions was discrimination. A plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. The Second Circuit has stated that "[p]retext may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the prima facie case, without more." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994). To establish pretext, a "plaintiff is not required to prove that the employer's proffered reasons are false but only that they were not the only reasons and that race made a difference." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989) (quoting *Burdine*, 450 U.S. at 256). In assessing the record to determine whether there is a genuine issue of material fact, the Court must "eschew credibility assessments," *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016), and resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.

White makes the following representations to argue that ADP's explanations above are pretextual:

(a) *Failure to promote*. As it relates to Shah's appointment as Senior Director under Ford, White argues that there is a genuine dispute of material fact because Ford represented generally to White that she would promote him and broaden his responsibilities—but at some point later hired Shah. Pl.'s Opp'n 14.[7] Even assuming that is true, all it suggests is that Ford was considering White for a promotion at some point, but it does not tend to suggest that her ultimate reasons for selecting Shah instead of promoting Ford for a particular role were pretextual.

---

[7] The parties dispute whether Ford made such a representation, but this point is not relevant to the issue and the disposition of the case.

(b) *In-Person Work Requirement.* White argues that ADP's reason for requiring him to go to the office is pretextual because White would not have additional face time with Ford by doing so, given that Ford largely worked from Florida—not from the New Jersey office. *Id.* But Plaintiff does not genuinely dispute that another member of his team, Reznick, and, his direct supervisor, Shah, worked from the New Jersey office as well, and that he would have more face time with them by working in person. Def.'s Reply 6. Plaintiff therefore fails to establish that the "face time" explanation for the in-person work requirement was pretextual.

(3) *Termination.* As it relates to his termination, White submits that he remained seated during the conversation with Ford that led to his ultimate termination, and that ADP's HR team did not thoroughly investigate Ford's claims before approving his termination. Pl.'s Opp'n 12–13. He argues that Ford's representations of the meeting were self-serving and further argues that the fact that the ADP HR team identified the reason for termination to be "unsatisfactory performance" as opposed to "insubordination"—when such a code existed in the system—demonstrates that ADP's proffered reason for his termination is pretextual. *Id.* at 15–17. Further, he highlights that his performance reviews were never unsatisfactory. *Id.* at 2. Plaintiff also offers the testimony of a longtime coworker who says that she never saw Plaintiff act aggressively towards anyone, and that she never feared for her physical safety around him. Pl.'s Opp'n 16. Finally, he argues that the fact that ADP offered him severance provides support that the reason it gives for his termination is pretextual. *Id.* at 17.

In essence, Plaintiff—though not specifically disputing that he became defensive, yelled, and raised his voice during his meeting with Ford—argues that Ford's overall description of the meeting is unfair and incorrect. But "[i]n determining whether the reason for an adverse action was pretextual, it is not for the Court to decide whether the complaints against plaintiff were truthful or fair, as long as they were made in good faith." *E.E.O.C. v. Bloomberg L.P.*, 967 F.

12

Supp. 2d 816, 875 (S.D.N.Y. 2013) (NYSHRL claim).[8]  And, here, Plaintiff offers nothing to suggest that Ford's complaint about his conduct was not made in good faith.  As to the coding of his termination as being based on "unsatisfactory performance," ADP explains that this is, in fact, "an accurate description of Plaintiff's misconduct."  Def.'s Reply 10.  While Plaintiff may dispute whether that is technically true, he does not offer evidence suggesting that this description was made in bad faith.  As to his coworker's testimony that she never saw Plaintiff act aggressively, such generalized testimony does not create a dispute of fact as to how Plaintiff behaved *during the meeting with Ford*, or how Ford felt about Plaintiff's conduct during that meeting.  And as to the offer of severance, such an offer does not, in itself, suggest that ADP did not believe that it had a good faith basis for his termination.  *See Morris v. Charter One Bank*, F.S.B., 275 F. Supp. 2d 249, 258 (N.D.N.Y. 2003) (offer of severance, which was unavailable to employees terminated for cause, did not establish that reason for termination was pretextual).

In sum, even drawing all factual inferences in favor of White, he has not raised sufficient evidence by which a reasonable jury could conclude that ADP's proffered reasons for its actions were pretextual.  White's ultimate argument here appears to be that the alleged adverse actions themselves give rise to an inference of discrimination.  However, that collapses the third and fourth elements of a Section 1981 claim and is not sufficient to survive a motion for summary judgment.  Thus, the Court concludes that granting summary judgment to ADP is warranted because there is no evidence in this record that would permit an inference of discriminatory intent.

---

[8] Discrimination claims under Section 1981 and the NYSHRL remain subject to the same *McDonnell Douglas* burden-shifting standards.  *See Rackley v. Constellis, LLC*, 2024 WL 3498718, at *7–8 (S.D.N.Y., June 17, 2024).

## II. NYSHRL and NYCHRL Claims

Plaintiff's remaining claims arise out of New York State and City laws and are raised under the Court's supplemental jurisdiction. AC ¶ 10. Because summary judgment has been granted to ADP on White's federal claim, the Court declines to exercise supplemental jurisdiction over the state and city law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404 (2d Cir. 2017) (Calabresi, J., concurring) ("[A]fter all federal claims have been dismissed, the default rule is that federal courts should not decide related state–law claims unless there is good reason for doing so."). Accordingly, White's NYSHRL and NYCHRL claims are dismissed without prejudice to refiling in state court. *See Russell v. N.Y.U.*, 2024 WL 1773218, at *3 (N.Y. Apr. 25, 2024) (noting that employment discrimination plaintiffs "not infrequently" opt to pursue "claims brought under the City and State HRLs" in state courts, after a federal court "grant[s] summary judgment on the federal claims, and decline[s] to exercise supplemental jurisdiction").[9]

---

[9] This matter was removed to federal court from state court, so there is perhaps an oddity in the fact that the Court chooses to exercise restraint over the State and City claims. ADP raises threshold issues related to the availability of State and City law here—chiefly, whether Defendant can even be liable under NYSHRL and NYCHRL as a foreign corporation when Plaintiff was an employee of at a New Jersey office but primarily worked from his home in New York. Def.'s Br. 5–9; Pl.'s Opp'n 7–9. While New York caselaw addresses variations of this question, the Court of Appeals has not addressed this precise question. Because this raises a thorny legal question on the applicability of New York law, the Court finds it prudent to exercise restraint, leaving these issues to be addressed by New York courts in the first instance.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** as to Count V and **DISMISSED** without prejudice to refiling in state court as to the remaining claims. The Clerk of Court is respectfully requested to terminate the docket entry at ECF No. 61.

Dated: September 30, 2024
      New York, New York

SO ORDERED.

_____
DALE E. HO
United States District Judge